UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **5:26-cv-02280-ACCV** | Date: | May 18, 2026 |
|---|---|---|---|
| Title: | ***Victor Alonso Molina v. Shannon Dicus, et al.*** | | |

| Present: The Honorable | Angela C. C. Viramontes, United States Magistrate Judge |
|---|---|

| D. Castellanos | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings (IN CHAMBERS):**    **ORDER GRANTING PETITIONER'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [Dkt. No. 2]**

## I.    INTRODUCTION

On April 30, 2026, petitioner Victor Alonso Molina ("Petitioner"), who is currently detained in the custody of Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus against respondents Todd Blanche, Markwayne Mullin, David Martin, Shannon Dicus, U.S. Department of Homeland Security, Executive Office for Immigration Review, and San Bernardino County Sheriff's Department ("Respondents").  (Docket Number ("Dkt. No.") 1, Petition ("Pet.").)  The same day, Petitioner filed an Ex Parte Application ("Application") seeking a Temporary Restraining Order ("TRO") enjoining Respondents from continuing to detain Petitioner.  (Dkt. No. 2-1, (Memorandum in Support of TRO Application ("App.").)

On May 7, 2026, Respondents filed a Notice of Intended Removal (Dkt. No. 8,) and their Answer to the Petition and the Application. (Dkt. No. 9, Answer.) Petitioner filed his reply in support of his Application on the same day. (Dkt. No. 10.) On May 12, 2026, Petitioner filed a supplement to the Application. (Dkt. No. 11.) The Court held a status conference on May 18, 2026, where the Application was discussed.

This matter, thus, stands submitted.

Petitioner argues his detention violates his due process rights and that he should be eligible for release under 8 U.S.C. § 1226(a). (Dkt. No. 2-1, App. at 5-7.) Respondents argue that Petitioner is detained because he is subject to an order of removal and such detention is authorized pursuant to 8 U.S.C. § 1231(a)(2). (Dkt. No. 9, Answer at 1.) Respondents also assert that the Court does not have jurisdiction to "impinge on the government's discretionary authority over when to execute a removal order[.]" (*Id.* at 2.)

The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Petitioner's Application is GRANTED.

## II.    BACKGROUND

Petitioner reentered the United States without a visa on June 6, 2013, following his ordered removal on April 15, 2013. (Dkt. No. 2-1, App. at 3, 5.) Petitioner has resided in the United States continuously since 2013 and has lived at the same address in Los Angeles since 2018. (*Id.* at 5.) On January 22, 2014, an immigration judge granted Petitioner Withholding of Removal under 8 U.S.C. § 1231(b)(3). (*Id.*) The immigration judge determined Petitioner had "established that it is more likely than not that he will face a threat to his life or freedom if removed to El Salvador." (Dkt. No. 2-2, at 5-6.) On April 28, 2026, while appearing at a voluntary ICE check-in, Petitioner was detained. (Dkt. No. 2-1, App. at 5.) Petitioner remains in ICE custody. (*Id.*).

## III.    LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Under Federal Rule of Civil Procedure 65, the Court may grant a preliminary injunction to prevent

"immediate and irreparable injury." Fed. R. Civ. P. 65(b). Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest ("*Winter* factors"). *See id.* at 20. Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified). Under the serious questions standard, the four *Winter* factors are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," and so long as the other *Winter* factors are also met. *Id.* at 1132.

## IV.   DISCUSSION

### A.   Habeas Jurisdiction

The Court has jurisdiction to consider Petitioner's claims under 28 U.S.C. § 2241. *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) ("The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention."). Respondents argue that 8 U.S.C. § 1252(g) strips the Court of power to order Petitioner's release. (Dkt. No. 9, Answer at 2.) For the reasons persuasively and repeatedly articulated in decisions of courts in this circuit, 8 U.S.C. § 1252(g) does not divest the Court of jurisdiction to consider claims for relief, like the ones here, grounded on bases "distinct from how the government's prosecutorial discretion was deployed" in commencing proceedings, adjudicating cases, or executing removal orders. *Doe v. Noem*, 781 F. Supp. 3d 1055, 1069 (E.D. Cal. 2025) (collecting cases). Petitioner challenges the constitutionality and sufficiency of the process by which he was arrested and detained. (Dkt. No. 1, Pet. 7-13.) This court has *habeas* jurisdiction under § 2241 to consider these claims and will not deny the Application on this basis. *See Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017).

**B.      The *Winter* Factors Weigh in Favor of Granting the Temporary Restraining Order.**

The Court now turns to addressing the *Winter* factors.

**1.      Likelihood of Success on the Merits**

The likelihood of success on the merits is the most important *Winter* factor, which "is especially true for constitutional claims." *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023) (citing *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).  Petitioner argues his ongoing detention violates the Due Process Clause because he was granted withholding of removal and 8 U.S.C. § 1226(a) applies.  (Dkt. No. 2-1, App. at 6-7.)  The Court finds Petitioner is likely to succeed on the merits or has at least raised "serious questions" regarding the merits of his claim that he is wrongfully detained pursuant to Section 1231(a)(2) without any process after he was granted withholding of removal under 8 U.S.C. § 1231(b)(3).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673, 145 S. Ct. 1003, 221 L. Ed. 2d 529 (2025) (citation omitted); *see also Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

Courts examine procedural due process claims in two steps. *Berrios v. Albarran*, No. 25-cv-01544-TLN-CSK, 2025 WL 3171140, at *2 (E.D. Cal. Nov. 13, 2025) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989)).  The first step asks whether a protected liberty interest under the Due Process Clause exists. *Id.*  The second step "examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Id.*

The Due Process Clause applies to noncitizens in the country in connection with removal proceedings, even if their presence is unlawful or temporary. *See Zadvydas*, 533 U.S. at 693; *Andriasian v. Immigr. and Naturalization Servs.*, 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to

deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process.").  This right to due process applies equally to the initial removal determination and determination of removal withholding relief to an identified third country.  *Johnson v. Guzman Chavez,* 594 U.S. 523, 557, 141 S. Ct. 2271, 210 L. Ed. 2d 656 (2021) (Breyer, J., dissenting) ("[A]ll here agree that the aliens are legally entitled to seek [ ] withholding-only relief.").

Here, Petitioner argues his arrest and his detention, after withholding of removal was granted, violate his procedural due process rights under the Fifth Amendment.  (Dkt. No. 1, Pet. at 12-13; 2-1, App. at 5-6.)  Respondents answer that Petitioner's detention is authorized under 8 U.S.C. § 1231(a)(2) because he has an order of removal.  (Dkt. No. 9, Answer at 1.)  Respondents also indicate that they intend to remove Petitioner to a third country, Mexico.  (Dkt. No. 9-1.)

While it is true that DHS has the authority to remove a noncitizen "to any other country as permitted by [8 U.S.C. § 1231(b)]," and that no regulation provides explicit procedures for the third country removal process, DHS "must exercise that authority in the appropriate way."  *Wani Site v. Holder*, 656 F.3d 590, 594 (7th Cir. 2011).  Specifically, DHS's designation must be permitted by Section 1231, and the designation must comport with due process.  *Reyes-Melendez v. INS*, 343 F.3d 1001, 1008 (9th Cir. 2003) ("[A] due process violation is not an exercise of discretion.").  Respondents' offer of a notice signed by an ICE official that ICE "intends to remove [Petitioner] to Mexico" is not sufficient support that they complied with due process.  (*See* Dkt. No. 9-1 (emphasis in original).)  Thus, given that Petitioner was granted withholding of removal by an immigration judge, lived for over twelve years in the United States, and then was re-detained while attending a voluntary ICE check-in without any process, the Court finds Petitioner has a protected liberty interest in remaining free from detention.

With step one of the due process analysis satisfied, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).  *See Hoang v. Santa Cruz*, No. 25-cv-02766-JCB-JC, 2025 WL 3141857, at *4 n.1 (C.D. Cal. October 28, 2025) ("The Court follows the Ninth Circuit, which regularly employs *Mathews v. Eldridge* in due process challenges in the immigration context.") (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022)); *Khan v. Noem*, No. 1:25-CV-01411-EPG-HC, 2025 WL 3089352, at *5-6 (E.D. Cal. Nov. 5, 2025) (applying the *Mathews* test to third country removal process).  The *Mathews* test considers three factors:

(1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  424 U.S. at 335.

The first *Mathews* factor is Petitioner's private interest.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.[1]  "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing, *e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972) (finding prison parolees have a due process liberty interest)).

As noted before, Petitioner was initially granted withholding of removal because an immigration judge determined that Petitioner had "established that it is more likely than not that he will face a threat to his life or freedom if removed to El Salvador." (Dkt. No. 2-2, at 5-6.)  Following that decision, Petitioner lived in the United States for over twelve years, working, and building community ties. Petitioner also has a private interest in not being erroneously removed to a third country where he has no connection, where he has never been removed before, and a designation that he has not had the opportunity to challenge. (*See* Dkt. No. 10, Reply at 2-3.)  Thus, Petitioner has a significant liberty interest in remaining free from detention and not being removed to a third country, which must be protected by adequate procedural safeguards.

As to the second *Mathews* factor—the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards—the Court finds the risk of erroneous deprivation is considerable here.  Petitioner was provided with no notice or opportunity to be heard before he was detained.  Petitioner was not provided with a notice of removal to a third country until *after* he was detained.  (*See* Dkt. No. 9-1.)

---

[1] The Supreme Court "has said that government detention violates [the Due Process] Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections, or, in certain special and narrow nonpunitive circumstances, where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (cleaned up).  Immigration removal proceedings are civil, not criminal, and courts assume they are nonpunitive in purpose and effect. *Id.*

Accordingly, the Court finds the risk of an erroneous deprivation of Petitioner's liberty interest was substantial when Respondents detained him, and now indicate the intent to remove him to a third country, without any process.

The final *Mathews* factor is the government's interest. Respondents fail to establish the government has any interest in allowing Respondents to arrest Petitioner without procedural protections. Respondents, similarly, do not offer any argument or explanation for why Petitioner could not have been provided with notice and an opportunity to be heard *before* he was detained and before being notified that he would be removed to a third country. *See Zinermon v. Burch*, 494 U.S. 113, 127, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990). Respondents, thus, fail to establish the government has any interest in Petitioner's continued detention.

After considering all three *Mathews* factors, the Court finds Petitioner has met his burden to demonstrate a reasonable likelihood of success on the merits of his claims.

## 2.    Likelihood of Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (citation modified) (quoting *Melendres*, 695 F.3d at 1002). "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez*, 872 F.3d at 994). Indeed, Petitioner "suffers potentially irreparable harm every day that he remains in custody without a hearing, which could ultimately result in his release from detention." *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1139 (N.D. Cal. 2018) (citation modified).

Here, as stated above, Petitioner has been detained after being granted withholding of removal and has lived in the United States for over twelve years since then. (Dkt. No. 2-1, App. at 5-9.) Hence, there can be no doubt Petitioner is—and will continue to be—irreparably harmed absent relief from this Court.

## 3.    Balance of Equities and Public Interest

The final two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009). The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v.*

*Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (citation modified) (affirming the balance of hardships weighed in favor of plaintiffs alleging the government violated the INA).

Here, because Petitioner has demonstrated a likelihood of success on his claims, the balance of equities and public interest "tip[ ] sharply" in his favor. *All. for the Wild Rockies*, 632 F.3d at 1135. In addition, any argument that there is a government interest in enforcing immigration laws is not persuasive because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766, 141 S. Ct. 2485, 210 L. Ed. 2d 856 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582, 585-586, 72 S. Ct. 863, 96 L. Ed. 1153 (1952)); *see also Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 777 F. Supp. 3d 1039, 1045-46 (N.D. Cal. 2025), *appeal dismissed*, No. 25-2358, 2025 WL 1189827 (9th Cir. Apr. 18, 2025) ("[C]ourts regularly find that '[t]here is generally no public interest in the perpetuation of unlawful agency action.'") (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). Accordingly, the third and fourth *Winter* factors weigh in favor of Petitioner.

Thus, because all four *Winter* factors weigh in favor of Petitioner, Petitioner is entitled to a Temporary Restraining Order.

## V.   CONCLUSION

For the reasons set forth above, the Court orders as follows:

1. Petitioner's Ex Parte Application for Temporary Restraining Order is GRANTED;
2. Respondents are ordered to release Petitioner forthwith and no later than one business day following the Court's order;
3. Respondents are required to return any confiscated property and documents to Petitioner;
4. Respondents are ordered to return Petitioner to the Central District of California;
5. Respondents are enjoined from relocating Petitioner outside the Central District of California pending final resolution of this case;
6. Respondents are enjoined from re-detaining Petitioner absent notice and a hearing before an immigration judge at which the government must justify his detention by clear and convincing evidence; and

7. Respondents are ordered to file a status report regarding compliance with the Court's order within three court days of Petitioner's release.

**IT IS SO ORDERED.**